UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GAIL SHAW,

      Plaintiff,

                              Case No. 15-14014

v.                          HON. DENISE PAGE HOOD

EQUIFAX INFORMATION
SOLUTIONS, INC., and DITECH
FINANCIAL LLC,

      Defendants.

_____/

**ORDER DENYING MOTION TO DISMISS [Docket. No. 17] and
MOTION FOR JUDGMENT ON THE PLEADINGS [Docket. No. 20]**

## I.    INTRODUCTION

On January 5, 2016, pursuant to a stipulation of the parties, Plaintiff filed a five-count First Amended Complaint ("FAC") against Defendant Ditech Financial LLC ("Ditech") and Defendant Experian Information Solutions, Inc. ("Experian"). **[Docket No. 10]** On January 19, 2016, Ditech filed a Motion to Dismiss. **[Docket No. 17]** On January 28, 2016, Experian filed a Motion for Judgment on the Pleadings and Joinder of Co-Defendant's Motion. **[Docket No. 20]** Both motions have been fully briefed, and a hearing on the motions is scheduled for March 9, 2016, at 3:00 p.m. For the reasons that follow, the Court denies both motions.

## II.   STATEMENT OF FACTS

In the FAC, Plaintiff claims that: (1) Ditech negligently violated the Fair Credit Reporting Act ("FCRA"), (2) Ditech willfully violated the FCRA, (3) Experian negligently violated the FCRA, (4) Experian willfully violated the FCRA, and (5) Ditech violated the Fair Debt Collection Practices Act ("FDCPA").  The claims arise out of Ditech maintaining a "charge-off" designation on an Experian trade line for a $19,895.91 debt on which Plaintiff stopped making payments in 2011. Plaintiff sets forth the following relevant factual allegations in her FAC:

> 6.  Ditech is reporting its trade line with account number 8900* ("Errant Trade Line") on Plaintiff's Experian credit file with multiple charge offs. It is reporting a charge off as recent as October 2015 on Ms. Shaw's Experian credit file. Further, it is reporting this trade line on her Experian credit file without any indication that it is disputed. All of this information is false and misleading as Ms. Shaw stopped making payments on the debt, which is the subject of the Errant Trade Line, in 2011.

> 7.  On or about August 24, 2105, Ms. Shaw obtained her Experian credit file and noticed that Ditech reported that the Errant Trade Line was charged off in March 2015. It was also reporting multiple charge offs on the Errant Trade Line.

> 8.  On or about September 14, 2015, Ms. Shaw submitted a letter to Experian disputing the language indicating that it was charged off in March 2015 and the multiple charge offs on the Errant Trade Line.

> 9.  Upon information and belief, Experian forwarded Plaintiff's dispute to Ditech.

> 10.  On or about September 28, 2015, Ms. Shaw received a letter

2

from Ditech stating that her inquiry was under review and that once it was reviewed, it would provide her with a written response within thirty days.

11. On or about October 29, 2015, Plaintiff obtained her Experian credit file and noticed that Ditech continued to report the multiple charge offs as recently as October 2015 on the Errant Trade Line. Further, Ditech failed to indicate that the Errant Trade Line was in dispute, in violation of the FDCPA.

FAC, ¶¶ 6-11 (emphasis added). Based on these factual allegations, Plaintiff alleges in the FAC that "[t]he Errant Trade Line [of Ditech] is inaccurate and creat[es] a misleading impression on [Plaintiff]'s consumer credit file with Experian to which it is reporting such trade line" (¶ 15) and the "reports [prepared by Experian] contained information about [Plaintiff] that was false, misleading and inaccurate." (¶¶ 26, 33). In an October 23, 2015, letter to Plaintiff, Ditech indicated that the charge-off actually occurred on March 28, 2012, and that information would be updated on her credit reports. Ditech and Plaintiff have since stipulated to dismiss Count V of the FAC (the FDCPA claim).

## III.   APPLICABLE LAW & ANALYSIS

### A.   Standard of Review

#### 1.   *Rule 12(b)(6)*

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. Accepting all factual allegations as true, the court will review the

complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). As a general rule, to survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Id.* at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 2.   *Rule 12(c)*

In deciding a motion brought pursuant to Rule 12(c), the standard is the same as that used in evaluating a motion brought under Fed. R. Civ. P. 12(b)(6). *See, e.g., Stein v U.S. Bancorp*, *et. al*, 2011 U.S. Dist. LEXIS 18357 at *9 (E.D. Mich. February 24, 2011). As such, the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

### B.   **Analysis**

4

Defendants ask the Court to dismiss the FAC because they believe Plaintiff does not allege with sufficient factual support that the subject trade line was inaccurate. Inaccuracy is an essential element of a claim for negligent or willful violation of the FCRA under section 1681s-2(b). *See, e.g., Spence v. TRW, Inc.*, 92 F.3d 380, 382 (6th Cir. 1996)). For that reason, Defendants assert that Plaintiff cannot, as a matter of law, recover for negligent or willful violation of the FCRA. Plaintiff counters that Defendants' motions should be denied because the plain and unambiguous factual allegations in the FAC (as set forth in Section II above) state that Defendants' reporting of the subject trade line was inaccurate.

### 1. *Relevant Legal Standards*

The purpose of the FCRA is "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Boggio v USAA Federal Sav. Bank,* 696 F.3d 611, 614 (6th Cir. 2012) (quoting *Safeco Ins. Co. v. Burr,* 551 U.S. 47, 52 (2007)). The FCRA imposes liability on both consumer reporting agencies and furnishers of information to those agencies for willful or negligent violations under the FCRA. *Nelski v. Trans Union, LLC,* 86 F. App'x 840, 844 (6th Cir. 2004). Section 1682s-2 of the FCRA bars "furnishers of information" "from spreading inaccurate consumer-credit information." *Boggio,* 696 F.3d at 614. To ensure compliance with this provision, a furnisher must provide credit-reporting

5

agencies with <u>accurate information</u> about consumers. *Id.* (citing 15 U.S.C. § 1681s-2). A credit-reporting agency also may forward consumer disputes to the furnisher and request that the furnisher respond accordingly. *Id.*

When a credit reporting agency forwards consumer disputes to the furnisher, the FCRA requires the furnisher to (1) conduct an investigation; (2) review any information provided by the consumer reporting agency; (3) report the results of the investigation to the consumer reporting agency; (4) report any inaccuracies to all consumer reporting agencies which may have received inaccurate information, and (5) correct any inaccuracies in the information it provides. 15 U.S.C. § 1681s-2(b). If the furnisher fails to comply with these requirements, such failure may give rise to a private cause of action. *See* 15 U.S.C. § 1681s-2(c)(2). If a furnisher concludes that its reporting is "inaccurate or incomplete or cannot be verified" after conducting the investigation, it must correct the information by:

    (1)    modify[ing] that item of information;
    (2)    delet[ing] that item of information; or
    (3)    permanently block[ing] the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1)(E).

The Sixth Circuit has held that reporting is accurate for the purposes of the FCRA as long as it is technically accurate, or accurate on its face, stating:

[A] plaintiff has failed to carry his initial burden if a court finds that the information contained in a challenged credit report was accurate on its

6

> face, or put somewhat differently, "technically accurate." That is, a credit reporting agency satisfies its duty under section 607(b) if it produces a report that contains factually correct information about a consumer that might nonetheless be misleading or incomplete in some respect.

*Dickens v. Trans Union Corp.,* 18 F. App'x 315, 318 (6th Cir. 2001) (quoting *Cahlin v. General Motors Acceptance Corp.,* 936 F.2d 1151, 1156 (11th Cir. 1991)). A consumer's conclusory allegation that a report is misleading is insufficient to meet this standard delineated by the Sixth Circuit. *See, e.g., Elsady v. Rapid Global Business Solutions, Inc.,* 2010 WL 2740154 (E.D. Mich. 2010) ("at a minimum, a plaintiff must provide that a creditor or consumer of credit reports would be misled. When the recipient was not misled, such a showing will be extremely difficult."). The standard, and definition of accuracy, remains the same in cases involving both credit reporting agencies and furnishers of information. *Id.* at *7 ("[T]here is no reason to define accuracy differently for consumer reporting agencies and furnishers. The purpose of [the] FCRA is to protect consumers by ensuring accurate reporting of information and the commitment to accuracy should apply equally to all entities involved in the reporting process."). *Id.*

### 2.    *Parties' Arguments*

Several important matters are not in dispute. First, Plaintiff does not dispute that Ditech charged-off the debt that is the subject of the trade line at issue in this lawsuit. Second, Plaintiff does not dispute that when a creditor charges-off a debt, it

is permitted to: (a) report that event to the credit reporting agencies such as Experian, and (b) note the status of the account as charged-off.  Third, Plaintiff acknowledges that the FCRA allows reporting of the charge-off status for seven years under 15 U.S.C. § 1681c(a)(4).  Finally, Plaintiff does not dispute that Defendants are permitted to report the month in which the charge-off occurred under the payment history section of a trade line on a consumer credit report, so long as the account was actually charged-off in the month indicated on the trade line.

Plaintiff's cause of action is based on her contention that Defendants inaccurately reported that the account was charged off on multiple occasions over a series of months.  Specifically, Plaintiff believes that Defendants violated the FCRA by reporting the debt as having been charged off in March, April, May, June, July, September and October of 2015.   Plaintiff argues that "[a] creditor 'charges off' a debt when it 'treats the debt as a loss or expense because payment is unlikely.'" *Gillespie v. Equifax Information Services, LLC*, 05C138, 2008 WL 4316950, at *8 n.1 (N.D. Ill. Sept. 15, 2008), citing Black's Law Dictionary 227 (7th ed. 1999).  Based on that definition, Plaintiff argues that a charge-off is an event that occurs at a definite point in time–and that point in time is when a creditor decides to treat a debt as a loss or expense.

Defendants reported that the account status changed to charge-off in March of

8

2015. (Doc #17-2).  Plaintiff contends the charge-off (identified by "CO" in the reports) should have been reported in the payment history portion of the subject trade line for the month of March, 2015, and only for March of 2015, since the account was charged off in March of 2015.  Plaintiff suggests that, although the status of the account may have been a charge-off in April, May, June, July, September and October of 2015, that information must be conveyed in the account status portion of the trade line, not the payment history portion of the trade line.

Defendants argue that they are entitled to dismissal of Plaintiff's claims because Plaintiff has failed to "demonstrate" the existence of an inaccuracy.  As Defendants argue, Plaintiff's arguments are unsupported by any authority.  In the words of Defendants, Plaintiff's arguments seem to be her opinion about how things in the credit reporting industry should be reported.  Defendants contend that Plaintiff's interpretation is contrary to the FCRA.  Defendants note that the FCRA allows reporting of the charge-off status for seven years, beginning "upon expiration of the 180-day period beginning on the date of the commencement of the delinquency which immediately preceded the collection activity, charge to profit and loss, or similar action." 15 U.S.C. § 1681c(a)(4); 15 U.S.C. § 1681c(c)(1).   Experian argues that "[a]ny potential creditor in the industry would know the purge date is calculated from the 180-day period beginning on the date of the commencement of the delinquency

that led to the charge off as outlined in the FCRA at 15 U.S.C. 1681(c)(1)." (Doc. No. 25, PgID 191)

Plaintiff argues that reporting the debt as charge-off only in March of 2015 creates the impression that the derogatory trade line would remain on Plaintiff's consumer credit report until March of 2022 (*i.e.*, seven years from March of 2015). The issue with the reports continuing to show the charge-off in the payment history portion of the trade line in subsequent months, Plaintiff argues, is that for each month a debt is reported as a charge-off, it creates the false impression that the derogatory trade line has been re-aged–and would remain on Plaintiff's consumer credit report for another seven years. For example, the charge-off reported on the October 2015 report gives the impression that the trade line should remain on her reports until October of 2022 (seven years from October of 2015), which is inaccurate. Plaintiff offers no authority in support of its argument that charge-offs can only be listed once or that a false impression or inaccuracy is created by listing the charge-off in multiple months.

Ditech relies on a case from this district decided in 2013, *see Bailey v. Equifax Information Services, LLC*, No. 13-10377, 2013 WL 3305710 (E.D. Mich. 2013), wherein Judge Edmunds granted a motion to dismiss/motion for judgment on the pleadings after finding that the pleadings did not demonstrate that a report was either

10

inaccurate or misleading, even though the plaintiff conclusorily alleged both (the complaint in *Bailey* was filed/prepared by the same legal counsel who represents Plaintiff in this case). In *Bailey*, the plaintiff complained that the report designated her as an "authorized user" on a third party's credit account–but she admitted that was true (*i.e.*, not inaccurate). The plaintiff also complained that the notation created a "misleading impression" of her consumer credit file. The Court found, however, that Plaintiff failed to "present any allegations in her complaint that the authorized user notation and reporting of the balance negatively affected her or her credit worthiness" and held that the *Bailey* plaintiff's allegations were insufficient to survive a motion to dismiss. Defendants argue that Plaintiff, like the plaintiff in *Bailey*, has not provided a factual basis for her conclusory allegation that the trade line is "inaccurate and creat[es] a misleading impression. FAC, ¶ 15.

Experian argues that any attempt by Plaintiff to further amend the FAC with respect to Experian would be futile[1] because its reporting of the Ditech trade line is proper, *i.e.*, the Ditech trade line can reflect a "charge off" for successive months in the payment history grid of her Experian report. Experian directs the Court to the Consumer Data Industry Association's ("CDIA") guidelines. Experian contends that the CDIA guidelines establish the universal standards for the consumer reporting

---

[1]Plaintiff has not indicated that she wants to amend the FAC.

industry.  Experian refers to Exhibit 2 of the CDIA guidelines as evidence that the industry standard is to continue to report the charge off in successive months in the payment history grid until there is some change in the status of the trade.  Experian argues that Plaintiff's contention that Experian can only show a charge off in one month is contrary to the industry standard and wholly unsupported.

Plaintiff counters that the CDIA guidelines are not legal authority but instead is a manual assembled by the credit reporting agencies themselves.  Plaintiff further argues that the manual itself contains a disclaimer that provides, in part:

> …AND YOU SHOULD NOT RELY ON ANY CONTENT IN THE CRRG AS TO THE SOLE BASIS FOR ACTION OR ASSUME THAT ANY TACTICS DESCRIBED THEREIN WOULD, BY THEMSELVES, ACHIEVE A PARTICULAR RESULT.

(Doc. No. 24-3, PgID 189).  Plaintiff suggests that the Court should give the CRRG little, if any, weight.

### 3.    Analysis and Conclusion

Plaintiff does expressly allege that information regarding the Ditech trade line on her credit reports issued by Experian is false, misleading, and inaccurate.  Plaintiff also sets forth factual allegations that support her claims that the reports contain false and inaccurate information, namely that multiple charge-offs based on Ditech trade line(s) were on her Experian report. *See* FAC, ¶¶6-8.  Plaintiff disputes that there were multiple charge-offs.  In other words, Plaintiff is complaining that information on the

Experian report is inaccurate.

For purposes of surviving a Rule 12(b)(6)/12(c) motion, it seems as though Plaintiff has met her burden. Although Ditech and Experian argue that the law allows them to list the charge-offs in any month/for multiple months during the applicable seven-year period, neither Ditech nor Experian has cited any authority that supports those arguments.

It is notable that only one case cited by Defendants was decided pursuant to the Rule 12(b)(6) standard (*Bailey*) — the other cases upon which Defendants rely were decided under the Rule 56 summary judgment standard. In *Bailey*, the plaintiff admitted there was no inaccurate information on her reports–and Plaintiff has not done so in this case. Under the FAC, Plaintiff contends that the listing of multiple charge-offs is inaccurate. Defendants have not shown that, even if what Plaintiff contends is true, Plaintiff cannot recover because Defendants have legal authority that allows them to list multiple charge-offs.

Even Experian's reliance on the CDIA guidelines would be more relevant at the summary judgment stage of the proceedings or at trial. Experian offers no authority for the proposition that industry guidelines or the industry standard should govern the Court's Rule 12(b)(6)/Rule 12(c) analysis of whether Plaintiff has sufficiently pled her FCRA claims.

13

**IV.   CONCLUSION**

IT IS ORDERED that, by the parties stipulation, Count V is DISMISSED.

IT IS FURTHER ORDERED that both Ditech's Motion to Dismiss **[Docket No. 17]** and Experian's Motion for Judgment on the Pleadings and Joinder of Co-Defendant's Motion **[Docket No. 20]** are **DENIED**.


S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated:  May 4, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 4, 2016, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager

14