## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

GAIL SHAW,

     Plaintiff,

                           Case No. 15-14014

v.                           HON. DENISE PAGE HOOD

EQUIFAX INFORMATION
SOLUTIONS, INC., and DITECH
FINANCIAL LLC,

     Defendants.

_____/

## ORDER GRANTING DITECH'S
## MOTION FOR SUMMARY JUDGMENT[Docket. No. 34]

## I.    INTRODUCTION

On January 5, 2016, Plaintiff filed a five-count First Amended Complaint ("FAC") against Defendant Ditech Financial LLC ("Ditech") and Defendant Experian Information Solutions, Inc. ("Experian"). **[Docket No. 10]** On June 6, 2016, Ditech filed a Motion for Summary Judgment **[Docket No. 34]**, and Ditech's Motion has been fully briefed.  On June 20, 2016, the Court entered a Stipulation and Order dismissing Experian, with prejudice. **[Docket No. 36]** For the reasons that follow, the Court grants Ditech's Motion.

1

## II.    STATEMENT OF FACTS

On January 31, 2002, Plaintiff gave a note to Conseco Finance Servicing Corp. in the original amount of $20,000.00. (Dkt. #34, Ex. A - Conseco Note).  The terms of the note required Plaintiff to make monthly payments of $291.84 beginning March 3, 2002 and maturing February 3, 2022. (Dkt. #34, Ex. A - Conseco Note; Ex. B - Deposition of Plaintiff at 7).  Plaintiff is currently in default under the terms of the Conseco note and has not made a payment since June of 2011. (Dkt. #34, Ex. B - Deposition of Plaintiff at 8).  Green Tree Servicing LLC acquired the note from Conseco, with Green Tree subsequently changing its name to Ditech Financial LLC. (Dkt. #34, Ex. B- Deposition of Plaintiff at 8).

In September 2015, counsel for Plaintiff submitted a letter to Experian dated September 14, 2015, stating, in relevant part: "Green Tree Servicing, Account Number ****1313. You are reporting this trade line on my credit report stating that it was charged off in March 2015. This is false as I stopped making payments regarding this trade in 2011 and it was charged off in 2011. Please remove the language indicating this trade line was charged off in March 2015.  Please remove any further multiple charged-off language as an account cannot be charged off more than once." (Dkt. #34, Ex. B - Deposition of Plaintiff at 9-10; Exhibit C - Plaintiff Dispute Letter to Experian).  When Plaintiff's counsel submitted the dispute to Experian, it was based

2

on the content of a credit report Plaintiff had obtained from freecreditreport.com, an online service. (Dkt. #34, Ex. B - Deposition of Plaintiff at 10-11). Plaintiff agrees that the Ditech tradeline is accurately reported as charged off and the "charge off date would be no later than the year of 2012." (Dkt. #34, Ex. D - Plaintiff Responses to Interrogatory No. 1; Ex. B - Deposition of Plaintiff at 44).

On September 25, 2015, Ditech received an automated credit dispute verification ("ACDV") from Experian. A copy of the September 14, 2015 letter from Plaintiff addressed to Experian was attached to the Experian ACDV. (Dkt. #34, Ex. E - Ditech's Response to Plaintiff's Interrogatory No. 3). On September 25, 2015, Ditech placed Plaintiff's account in dispute with the credit bureaus pending its investigation and preparing responses to the ACDV and the letter received from Plaintiff. (Dkt. #34, Ex. E - Ditech's Response to Plaintiff's Interrogatory No. 3). Following receipt of Plaintiff's dispute from Experian, Ditech conducted an investigation. (Dkt. #34, Ex. E - Ditech's Response to Plaintiff's Interrogatory No. 3). During the course of its investigation, Ditech verified that Plaintiff's account was charged off effective March 28, 2012 and that the balance due of $19,895.91 was accurate. (Dkt. #34, Ex. E - Ditech Response to Plaintiff's Interrogatory No. 3).

Ditech submitted an Automated Universal Data form (AUD) to all credit bureaus, including Experian, on September 25, 2015 to update Plaintiff's account.

The AUD indicated that Plaintiff's debt was charged-off on March 28, 2012, with a balance due of $19,895.91, and verified the date of first delinquency as "7/15/11," in accordance with Ditech's obligations under the Section 623(a)(5) of the Fair Credit Reporting Act. (Dkt. #34, Ex. E - Ditech's Response to Plaintiff's Interrogatory No. 3; Ex. F - AUD Submission).  Plaintiff never received any information from Ditech with a charge off date other than the March 28, 2012 date that was reported. (Dkt. #34, Ex. B - Deposition of Plaintiff at 20).  Experian received a response to the ACDV from Ditech dated September 25, 2015, confirming that Plaintiff's account was charged off with a date of last payment of June 8, 2011 and a date of first delinquency identified as July 15, 2011. (Dkt. #34, Ex. G - Response to Experian ACDV).

On October 15, 2015, Plaintiff obtained her Experian credit file that shows that Ditech reported Plaintiff's account as having been charged off (by the designation "CO") in the months of March, April, May, June, July, September, and October of 2015.  Ditech had not removed those notations on its trade line in response to Plaintiff's September 14, 2015 dispute letter.  By letter dated October 23, 2015, Ditech responded to Plaintiff directly, (1) confirming that her account was charged-off as of March 28, 2012 with a balance due of $19,895.91, and (2) informing her that Ditech had submitted an AUD on September 25, 2015. (Dkt. #34, Ex. E - Ditech's Response to Plaintiff's Interrogatory No. 3; Ex. G - October 23, 2015 Correspondence from

4

Ditech).  Plaintiff contends that the charge off was "still showing up in August, September, October [of 2015] as 'CO' on [her] credit report." (Dkt. #34, Ex. B - Deposition of Plaintiff at 18).

In the meantime, Plaintiff filed suit in state court on October 19, 2015 against Ditech and Equifax Information Services, LLC. Ditech, joined by Equifax, timely removed this action to federal court on November 16, 2015. (Dkt. #1).  Plaintiff filed the FAC, removing Equifax and adding Experian Information Solutions LLC as a defendant, on January 5, 2016. (Dkt. #10).  Plaintiff subsequently agreed to dismiss Counts III and IV (against Experian) and Count V (against Ditech) of the FAC. (See Dkt. #30, 36).  The only claims remaining before the court are Plaintiff's claims against Ditech, alleging that Ditech negligently and willfully violated the Fair Credit Reporting Act (Counts I and II).

During her deposition, Plaintiff testified that she suffered mental anguish, humiliation and embarrassment as the result of Ditech's failure to direct Experian to remove the notations on its trade line indicating that Plaintiff's account was charged off in the months of March, April, May, June, July, September and October of 2015. (Dkt. #34-2, p. 35-36, 37).   She testified that the mental amguish, humiliation and embarrassment she suffered as the result of Ditech's action and omissions manifest themselves in the form of: (a) difficulty sleeping, and (b) embarrassment when she

5

considered getting  an extension of credit. (Dkt. #34-2, p. 35-36, 37).

## III.   APPLICABLE LAW & ANALYSIS

### A.   Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).   The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.  Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete

failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

### B.      Analysis

Ditech moves the Court to dismiss the FAC because it believes Plaintiff cannot, as a matter of law, establish that the subject trade line was inaccurate. Inaccuracy is an essential element of a claim for negligent or willful violation of the FCRA under section 1681s-2(b). *See, e.g., Spence v. TRW, Inc.*, 92 F.3d 380, 382 (6th Cir. 1996)). Plaintiff counters that Ditech's Motion should be denied because the facts show that there remains a material dispute whether Ditech's reporting of the charge-off on Plaintiff's debt was inaccurate.

### 1.      *Relevant Legal Standards*

The purpose of the FCRA is "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Boggio v USAA Federal Sav. Bank,* 696 F.3d 611, 614 (6th Cir. 2012) (quoting *Safeco Ins. Co. v. Burr,* 551 U.S. 47, 52 (2007)). The FCRA imposes liability on both consumer reporting agencies and furnishers of information to those agencies for willful or negligent violations under the FCRA. *Nelski v. Trans Union, LLC,* 86 F. App'x 840,

7

844 (6th Cir. 2004). Section 1682s-2 of the FCRA bars "furnishers of information" "from spreading inaccurate consumer-credit information." *Boggio,* 696 F.3d at 614. To ensure compliance with this provision, a furnisher must provide credit-reporting agencies with <u>accurate information</u> about consumers. *Id.* (citing 15 U.S.C. § 1681s-2). A credit-reporting agency also may forward consumer disputes to the furnisher and request that the furnisher respond accordingly. *Id.*

When a credit reporting agency forwards consumer disputes to the furnisher, the FCRA requires the furnisher to (1) conduct an investigation; (2) review any information provided by the consumer reporting agency; (3) report the results of the investigation to the consumer reporting agency; (4) report any inaccuracies to all consumer reporting agencies which may have received inaccurate information, and (5) correct any inaccuracies in the information it provides. 15 U.S.C. § 1681s-2(b). If the furnisher fails to comply with these requirements, such failure may give rise to a private cause of action. *See* 15 U.S.C. § 1681s-2(c)(2). If a furnisher concludes that its reporting is "inaccurate or incomplete or cannot be verified" after conducting the investigation, it must correct the information by:

    (1)    modify[ing] that item of information;
    (2)    delet[ing] that item of information; or
    (3)    permanently block[ing] the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1)(E).

The Sixth Circuit has held that reporting is accurate for purposes of the FCRA as long as it is technically accurate, or accurate on its face, stating:

> [A] plaintiff has failed to carry his initial burden if a court finds that the information contained in a challenged credit report was accurate on its face, or put somewhat differently, "technically accurate." That is, a credit reporting agency satisfies its duty under section 607(b) if it produces a report that contains factually correct information about a consumer that might nonetheless be misleading or incomplete in some respect.

*Dickens v. Trans Union Corp.,* 18 F. App'x 315, 318 (6th Cir. 2001) (quoting *Cahlin v. General Motors Acceptance Corp.,* 936 F.2d 1151, 1156 (11th Cir. 1991)). A consumer's conclusory allegation that a report is misleading is insufficient to meet this standard delineated by the Sixth Circuit. *See, e.g., Elsady v. Rapid Global Business Solutions, Inc.,* 2010 WL 2740154 (E.D. Mich. 2010) ("at a minimum, a plaintiff must provide that a creditor or consumer of credit reports would be misled. When the recipient was not misled, such a showing will be extremely difficult."). The standard, and the definition of accuracy, remains the same in cases involving both credit reporting agencies and furnishers of information. *Id.* at *7 ("[T]here is no reason to define accuracy differently for consumer reporting agencies and furnishers. The purpose of [the] FCRA is to protect consumers by ensuring accurate reporting of information and the commitment to accuracy should apply equally to all entities involved in the reporting process."). *Id.*

> 2. *Accuracy of the Experian Credit Report*

9

Several important matters are not in dispute.  First, Plaintiff does not dispute that Ditech charged-off the debt that is the subject of the trade line at issue in this lawsuit on March 28, 2012. Second, Plaintiff does not dispute that when a creditor such as Ditech charges-off a debt, the creditor is permitted to: (a) report that event to credit reporting agencies such as Experian, and (b) note the status of the account as charged-off.  Third, Plaintiff acknowledges that the FCRA allows reporting of the charge-off status for seven years under 15 U.S.C. § 1681c(a)(4); with respect to her debt, it is undisputed that the charge-off status can be reported until April 2018.

Plaintiff's cause of action is based on her contention that Ditech inaccurately reported that the account was charged off on multiple occasions over a 7-8 month period.  Specifically, Plaintiff argues that there remains a genuine dispute of material fact as to whether Ditech violated the FCRA by reporting the debt as having been charged off in March, April, May, June, July, September and October 2015.  Plaintiff contends that, by reporting the debt as charged off in March through October 2015, Ditech produced an inaccurate trade line.  Plaintiff argues that the trade line is "patently incorrect" and "misleading in such a way and to such an extent that it can be expected to have [and has had] an adverse effect," *Bailey v. Equifax Info. Servs., LLC*, No. 13-10377, 2013 WL 3305710 (E.D. Mich. July 1, 2013), because: (1) the actual charge-off date of March 28, 2012 is not listed, and (2) there is no way to

10

calculate the charge off date of March 28, 2012 on her Experian credit report. Plaintiff contends there is no way to calculate the charge-off date of March 28, 2012 because: (a) there is no indication that the date of first delinquency was July 15, 2011, and (b) of the CO notations in March - October 2015.

Ditech argues that Plaintiff's argument ignores her own deposition testimony and the contents of the Experian credit report.  First, Plaintiff acknowledged at her deposition that the Experian credit report says "This account is scheduled to continue to record until April 2018." As Ditech argues, if the account can continue to record until April 2018, it is clear to the industry that the charge-off began to run in April 2011 (seven years earlier).  Second, it is undisputed that the "Account Information" section of the Experian credit report shows that "Date of Last Payment was "06-08-2011" and the "FCRA 1st Date of Delinquency" was "7-15-2011."  Third, it is undisputed that the "Account History" portion of the Experian credit report has a chart that shows her history since September 2008, and that beginning in March 2012, the designation in the chart changed to "D," stayed a "D" through May 2012, and then was an "L" up to July 2015, the last month reported.

Fourth, Plaintiff has admitted that no one told her that the trade line was misleading (including the "Account History" section), and her belief that the trade line was misleading is only her opinion.  Based on *Elsady* and *Dickens*, a personal opinion

11

such as Plaintiff's constitutes "mere speculation that the notation was misleading" and is insufficient to support a claim of inaccuracy under the FCRA. *Elsady*, 2010 WL 2740154, at *7 (E.D. Mich. 2010); *Dickens*, 18 F. App'x at 318.

The Court finds that the Experian credit report for Plaintiff reflects the remaining balance on her account, confirms that the account has been charged off, and identifies Plaintiff as the responsible consumer.  The Account History section shows seven full years of Plaintiff's payment status – from nearly three years of "on-time" payments, to delinquent payments, to being in default, to having the account charged off, all of which are indisputably accurate.  Although there is another section of her Experian credit report that shows "CO" for March - October 2015, there is nothing to indicate, as Plaintiff intimates, that anyone would believe there has been more than one charge off because, as all parties agree, there is only one charge off event.  In this case, that event occurred on March 28, 2012.

Because the undisputed evidence reflects that there is no inaccuracy on Plaintiff's Experian credit report, Plaintiff's claims for negligent and willful violation of the FCRA must be dismissed. *See, e.g., Bailey v. Equifax Information Services, LLC*, No. 13-10377, 2013 WL 3305710 (E.D. Mich. 2013), wherein Judge Nancy G. Edmunds granted a motion to dismiss/motion for judgment on the pleadings after finding that the pleadings did not demonstrate that a report was either inaccurate or

misleading, even though the plaintiff conclusorily alleged both.

In *Bailey*, the plaintiff complained that the report designated her as an "authorized user" on a third party's credit account–but she admitted that was true (*i.e.*, not inaccurate). The plaintiff also complained that the notation created a "misleading impression" of her consumer credit file. The court found, however, that Plaintiff failed to "present any allegations in her complaint that the authorized user notation and reporting of the balance negatively affected her or her credit worthiness." The court held that the plaintiff's allegations were insufficient to survive a motion to dismiss. Ditech argues, correctly, that Plaintiff, like the plaintiff in *Bailey*, has not provided a factual basis for her conclusory allegation that the trade line is "inaccurate and creat[es] a misleading impression." FAC, ¶ 15.

Ditech's Motion for Summary Judgment is granted.

**IV.    CONCLUSION**

Accordingly, for the reasons stated above,

IT IS ORDERED that Ditech's Motion for Summary Judgment **[Docket No. 34]** is **GRANTED**.  IT IS FURTHER ORDERED that Plaintiff's cause of action be **DISMISSED WITH PREJUDICE**.  Judgment will be entered accordingly.


                              s/Denise Page Hood
                              Denise Page Hood
                              Chief Judge, United States District Court

Dated:  August 31, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 31, 2016, by electronic and/or ordinary mail.

                              s/LaShawn R. Saulsberry
                              Case Manager